JUDGE McMAHON

09 CV 9381

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE BANK OF NEW YORK MELLON, as
ESCROW AGENT,

                Plaintiff,

   - against -

GPC HOLDINGS B.V., CITICORP
INTERNATIONAL FINANCE
CORPORATION, LAT CAP II SPV (SPAIN)
S.L., INTERNATIONAL PACKAGING
COMPANY S.Á.R.L. and PARIBAS NORTH
AMERICA, INC.,

                Defendants.

---

Civil Action No.:

**INTERPLEADER COMPLAINT**



      Plaintiff, The Bank of New York Mellon, as Escrow Agent ("BNY Mellon" or "Escrow Agent"), by its attorneys, Emmet, Marvin & Martin, LLP, as and for its complaint, alleges as follows:

### NATURE OF THE ACTION

      1.     BNY Mellon brings this action of statutory interpleader under 28 U.S.C. § 1335 to resolve competing claims to monies in its custody or possession pursuant to an Escrow Agreement dated on or about December 7, 2007 (the "Escrow Agreement"), which claims may subject BNY Mellon to multiple or inconsistent liabilities.

### PARTIES

      2.     Plaintiff, BNY Mellon, is a banking corporation organized and existing under the laws of the State of New York, with a principal place of business located at One Wall Street, New York, New York.

3.      Upon information and belief, defendant, GPC Holdings B.V. ("GPC" or "Purchaser"), is a foreign corporation, with an office for the transaction of business at 320 Park Avenue, 18th Floor, New York, New York, 10022.

4.      Upon information and belief, defendant, Citicorp International Finance Corporation ("Citicorp"), is a Delaware corporation, with an office for the transaction of business at One Penns Way, New Castle, Delaware 19720.

5.      Upon information and belief, defendant, Lat Cap II (Spain) S.L. ("Lat Cap"), is a foreign corporation, with an office for the transaction of business at c/o Fortis Intertrust Spain, S.A., Calle Serrano 73, 28006 Madrid, Spain.

6.      Upon information and belief, defendant, International Packaging Corporation S.á.r.l. ("International Packaging"), is a foreign corporation, with an office for the transaction of business at 12, rue Léon Thyes, L-2636 Luxembourg.

7.      Upon information and belief, defendant, Paribas North America, Inc. ("Paribas", and together with Citicorp, Lat Cap and International Packaging, the "Sellers", and Sellers together with GPC, the "Defendants" or "Escrow Parties"), is a Delaware corporation, with an office for the transaction of business at 787 Seventh Avenue, New York, New York 10019.

## **JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1335.  BNY Mellon is holding custody of monies in excess of $500.00, to which there exist adverse claimants of diverse citizenship, who have claimed to be entitled to such monies.  BNY Mellon is also willing and prepared to deposit said monies into the registry of the Court pursuant to 28 U.S.C. § 1335(a)(2) and will, shortly after filing this complaint, submit a proposed order to the Court

seeking to deposit said monies into the registry of the Court under Local Civil Rule 67.1 and Federal Rule of Civil Procedure 67(a).

9.     Pursuant to the Paragraph 13 of Part II of Escrow Agreement, Defendants consented to the jurisdiction of this Court and each waived personal service of process in this action:

> Each of the Escrow Parties and Escrow Agent hereby submits to the personal jurisdiction of and each agrees that all proceedings relating hereto shall be brought in courts located within the City and State of New York.  Each of the Escrow Parties and Escrow Agent hereby waives the right to trial by jury and to assert counterclaims in any such proceedings . . . . Each Escrow Party and Escrow Agent waives personal service of process and contents to service of process by certified or registered mail, return receipt requested, directed to it at the address last specified for notices hereunder, and such service shall be deemed completed ten (10) calendar days after the same is so mailed.

10.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1397 because defendant GPC and defendant Paribas, both claimants to the monies held by Plaintiff, maintain a place for the transaction of business in this District.  Venue is also proper because, pursuant to the Escrow Agreement, Defendants have consented to venue in this District.

## FACTUAL BACKGROUND

11.     Upon information and belief, Purchaser and Sellers entered into a Stock Purchase Agreement, dated as of August 30, 2007 (the "Purchase Agreement"), providing for the purchase by Purchaser of all of the Shares (as defined in the Purchase Agreement) from Sellers.

12.     Pursuant to the Escrow Agreement, Purchaser agreed to deposit $10,000,000 (the "Holdback Amount") at the closing in an account specified in Schedule I of the Escrow Agreement in order to satisfy certain indemnification obligations of Sellers.

13.     Pursuant to the Escrow Agreement, the Purchaser also agreed to deposit into another account specified in Schedule I of the Escrow Agreement (a) $96,000,000.00 to be

deposited no later than 3 p.m. New York time on December 10, 2007 and (b)(i) an amount equal to the aggregate amount required to satisfy the Purchaser's obligation under the Purchase Agreement to pay each of the Sellers (other than International Packaging) such Seller's Pro Rata Fraction (as defined in the Escrow Agreement) of the Adjusted Base Purchase Price (as defined in the Purchase Agreement) at the closing minus (ii) $96,000,000.00, to be deposited no later than 10 a.m. New York time on the Closing Date (as defined in the Purchase Agreement) (the sum of the amounts described in clauses (a) and (b), the "Closing Cash Amount").

14.     On or about December 7, 2007, Purchaser and Sellers entered into the Escrow Agreement with The Bank of New York (now known as BNY Mellon) pursuant to which, among other things, Escrow Agent agreed to hold in escrow and distribute:  (1) the Holdback Amount plus interest, dividends and other distributions and payments thereon and on any such reinvested interest, dividends and other distributions and payments received by Escrow Agent (the "Holdback Escrow Property"); and (2) the Closing Cash Amount plus all interest thereon received by Escrow Agent (the "Closing Escrow Property", and together with the Holdback Escrow Property, the "Escrow Property").

15.     As of the date hereof, the balance of the Holdback Escrow Property is $8,744,222.72, after disbursements in July 2008 of $1,512,583.90 to four of the Escrow Parties in accordance with the terms of the Escrow Agreement.

16.     Paragraph 1(d) of Part I of the Escrow Agreement provides, in relevant part, that the Escrow Property shall be deemed segregated amongst the Sellers in accordance with their respective Pro Rata Fractions (as defined in the Escrow Agreement):

> Each of the Holdback Escrow Property and, from and after the Closing, the Closing Escrow Property, shall be deemed to be segregated amongst Sellers in accordance with their respective Pro Rata Fractions (as hereinafter defined), such that any payment required to be made to any Seller, Purchaser, any other

4

Purchaser Indemnified Party, Escrow Agent or any other Person from such Escrow Property following the Closing shall be made solely from such Seller's portion of such Escrow Property (such portion, with respect to such Seller, and with respect to either the Closing Escrow Property or the Holdback Escrow Property, as applicable, the "Applicable Portion").  In no event shall any payment required to be made from any Seller's Applicable Portion be made from any other Seller's Applicable Portion.

17.     In addition, Paragraph 3.2 of Part I of the Escrow Agreement provides that Escrow Agent is directed to hold and distribute the Holdback Escrow Property in the following manner:

(a)     Each Seller's Applicable Portion of the Holdback Escrow Property shall be released in a single release or from time to time in multiple releases to Purchaser and/or such Seller (i) in accordance with joint written instructions signed by an Authorized Person of each of Purchaser and such Seller and (ii) in an amount equal to the lesser of (x) the amount specified in such written instructions, and (y) the amount remaining in such Applicable Portion immediately prior to such release.  Each of Purchaser and each Seller agrees to cause their Authorized Persons to deliver such instructions whenever required by the Purchase Agreement.

(b)     Promptly following receipt or execution by Purchaser and a Seller of a Final Resolution (as hereinafter defined) relating to such Seller's Applicable Portion of the Holdback Escrow Property, Purchaser and such Seller shall deliver joint written instructions to Escrow Agent indicating the claims specified in a Claims Notice ("Claims") that have been resolved by such Final Resolution (and thus no longer pending) and directing Escrow Agent to release to (i) Purchaser an amount from such Applicable Portion equal to the lesser of (x) the amount that is ordered or agreed to be paid to Purchaser from such Applicable Portion, if any, pursuant to such Final Resolution and (y) the amount remaining in such Applicable Portion immediately prior to such release and (ii) such Seller an amount equal to the lesser of (A) the excess, if any of (I) the Reserve Escrow Amount (as hereinafter defined) that was retained in such Applicable Portion on the Cut-Off Date (hereinafter defined) in respect of Claims that are the subject of such Final Resolution, over (II) the amount released to Purchaser pursuant to clause (i), and (B) the amount remaining in such Applicable Portion immediately prior to such release *minus* the amount that would be required to pay all amounts that would be owing under Article VII of the Purchase Agreement from such Applicable Portion to Purchaser Indemnified Parties if all Claims under such Article against the Holdback Escrow Property in such Applicable Portion that are pending, but unresolved, immediately prior to release, were resolved in favor of the Purchaser Indemnified Parties.

(c)    On the date that is 18 months after the date hereof (the "Cut-Off Date"), Escrow Agent shall release to each Seller an amount from such Seller's Applicable Portion of the Holdback Escrow Property that would cause the amount remaining in such Seller's Applicable Portion to be the lesser of (x) the amount remaining in such Seller's Applicable Portion immediately prior to the Cut-Off Date and (y) the amount equal to the total of all amounts sought by Purchaser or any other Purchaser Indemnified Party from such Seller's Applicable Portion for any claims identified in a Claim Notice delivered by any Purchaser Indemnified Party to such Seller and Escrow Agent prior to the Cut-Off Date with respect to which joint instructions have not been delivered to Escrow Agent pursuant to Section 3(a) or 3(b) by the Cut-Off Date.

18.    Pursuant to the terms of the Escrow Agreement, the Cut-Off Date was June 7, 2009.

19.    Pursuant to Paragraph 12(b) of Part II of the Escrow Agreement, Escrow Agent is permitted to refuse to comply with any and all claims, demands or instructions with respect to the Escrow Property in the event of any dispute between or conflicting claims by or among the Escrow Parties:

In the event of any dispute between or conflicting claims by or among the Escrow Parties and/or any other person or entity with respect to any Escrow Property, Escrow Agent shall be entitled, in its sole discretion, to refuse to comply with any and all claims, demands or instructions with respect to such Escrow Property so long as such dispute or conflict shall continue, and Escrow Agent shall not be nor become liable in any way to the Escrow Parties for failure or refusal to comply with such conflicting claims, demands or instructions.

20.    Paragraph 12(b) of Part II of the Escrow Agreement further provides that, in its reasonable discretion, BNY Mellon may refuse to act until either:

(i) such conflicting or adverse claims or demands shall have been determined by a final order, judgment or decree of a court of competent jurisdiction, which order, judgment or decree is not subject to appeal, or settled by agreement between the conflicting parties as evidenced in a writing satisfactory to Escrow Agent or (ii) Escrow Agent shall have received security or an indemnity satisfactory to it sufficient to hold it harmless from and against any and all Losses which it may incur by reason of so acting. Escrow Agent may, in addition, elect, in its reasonable discretion, to commence an interpleader action or seek other judicial relief or orders as it may deem, in its reasonable discretion, necessary.

21.    Upon information and belief, by letter, dated April 7, 2009, Purchaser delivered a Notice of Claim to Sellers prior to the Cut-Off Date notifying Sellers of Purchaser's claim for indemnification under the Purchase Agreement based upon asserted breaches of Sellers' representations and warranties set forth in the Purchase Agreement, in the amount of $5,409,515.00 (the "April 7 Claim Notice").

22.    Upon information and belief, by letter, dated April 20, 2009, counsel for Citicorp and Lat Cap responded to the April 7 Claim Notice by contesting Purchaser's allegations set forth therein ("Sellers' Response").

23.    By letter, dated June 11, 2009, counsel for Purchaser delivered an amended Notice of Claim to Sellers, disputing the allegations in Sellers' Response, and increased the amount of its claim to $6,211,940.00 (the "Claim").

24.    By letter, dated June 12, 2009, Escrow Agent notified Sellers and Purchaser that, as a result of the dispute between the Sellers and Purchaser, Escrow Agent would not disburse any portion of the Holdback Escrow Property until the claims were resolved by "final order, judgment or decree of court of competent jurisdiction, which order, judgment or decree is not subject to appeal, or settled by agreement between the conflicting parties as evidenced by a writing satisfactory to Escrow Agent" in accordance with Paragraph 12(b) of Part II of the Escrow Agreement.

25.    By letter to BNY Mellon, dated June 23, 2009, counsel for Citicorp and Lat Cap instructed that Escrow Agent release to Citicorp and Lat Cap the amount of each respective Seller's Applicable Portion of the Holdback Escrow Property after subtracting from the Holdback Escrow Property the amount of the Claim.

26.     By letter to Citicorp and Lat Cap, dated June 29, 2009, Escrow Agent reiterated that Escrow Agent would not release any of the Holdback Escrow Property without an order, judgment or decree of court of competent jurisdiction or joint written instructions to Escrow Agent agreed upon by each of the Escrow Parties as required under Paragraph 12(b) of Part II of the Escrow Agreement.

27.     As of the date hereof, counsel for Escrow Agent has been advised by counsel for Citicorp and Lat Cap that the Escrow Parties have been unable to resolve the dispute.

## COUNT ONE

28.     BNY Mellon repeats and realleges the allegations contained in paragraphs 1 through 27 as if fully set forth herein.

29.     As of the date hereof, the total value of the Holdback Escrow Property being held by BNY Mellon is $8,744,222.72.

30.     Purchaser and Sellers are in dispute as to their claims to the Holdback Escrow Property.

31.     BNY Mellon is indifferent and disinterested as to which of the Defendants is entitled to the Holdback Escrow Property or to the division of the Holdback Escrow Property between them.

32.     BNY Mellon is unable to determine which party is entitled to the Holdback Escrow Property.

33.     As a result of the competing claims to the Holdback Escrow Property, BNY Mellon is or may be exposed to multiple claims and liabilities if it were to distribute the Holdback Escrow Property without a final court order or agreement of Defendants.

34.     BNY Mellon is willing to pay the Holdback Escrow Property to whichever of Defendants the Court shall adjudge is entitled thereto, or to pay the monies into Court, the disposition of which to await the determination thereof.

35.     By reason on the foregoing, BNY Mellon is entitled to a judgment discharging it from liability in connection with the Holdback Escrow Property and requiring Defendants to interplead and settle among themselves.

## COUNT TWO

36.     BNY Mellon repeats and realleges the allegations contained in paragraphs 1 through 35 as if fully set forth herein.

37.     Paragraph 4(b) of Part II of the Escrow Agreement, provides in relevant part that:

(i) any obligation to make any payment to or on behalf of Escrow Agent that is applicable to the Escrow Parties as a group. . . shall be a several, and not a joint, obligation of the Escrow Parties, to be borne 50% by Purchaser, on the one hand, and 50% by Sellers, on the other hand (in accordance with their respective Pro Rata Fractions) and (ii) any obligation of a Seller to make any payment to or on behalf of  Escrow Agent. . . shall be satisfied first from the Escrow Property in such Seller's Applicable Portion until such Escrow Property is exhausted. . .

38.     Paragraph 10 of Part II of the Escrow Agreement provides, among other things, that BNY Mellon is fully indemnified by the Escrow Parties:

Subject to Paragraph 4(b) of Part II of this Escrow Agreement, Escrow Parties shall be liable for and shall reimburse and indemnify Escrow Agent and hold Escrow Agent harmless from and against any and all claims, losses, liabilities, costs, damages or expenses (including reasonable attorneys' fees and expenses)... arising from or in connection with or related to this Escrow Agreement...

39.     In addition, Paragraph 12(b) of Part II of the Escrow Agreement provides that "[s]ubject to Paragraph 4(b) of Part II of this Escrow Agreement, the costs and expenses (including reasonable attorneys' fees and expenses) incurred by Escrow Agent in connection with [an interpleader action] shall be paid by the Escrow Parties."

40.     In pursuing this interpleader action, BNY Mellon has incurred and will continue to incur, substantial costs and expenses, including, but not limited to, attorneys' fees and expenses.

41.     By virtue of the foregoing, BNY Mellon is entitled to a judgment for its costs and expenses, including reasonable attorneys' fees and expenses, incurred in connection with or related to the Escrow Agreement.

**WHEREFORE**, plaintiff The Bank of New York Mellon, as Escrow Agent, respectfully requests that this Court adjudge that:

(a)     Defendants are permanently restrained and enjoined from instituting or prosecuting any proceeding against BNY Mellon for recovery of the Holdback Escrow Property pursuant to 28 U.S.C. § 2361;

(b)     Defendants are required to interplead and settle among themselves their rights to the Holdback Escrow Property pursuant to 28 U.S.C. § 1335;

(c)     BNY Mellon is discharged of all liability on any claim, now or hereafter made, in connection with the Holdback Escrow Property;

(d)     BNY Mellon is awarded its costs and expenses, including reasonable attorneys' fees and expenses, incurred in connection with this action; and

(e)     BNY Mellon is awarded such other and further relief as this Court deems proper.

Dated: New York, New York
       November 12, 2009

**EMMET, MARVIN & MARTIN, LLP**

By:_____
Tyler J. Kandel (TK-4452)
Laura J. Babcock (LB-9623)
*Attorneys for Plaintiff*
*The Bank of New York Mellon, as Escrow Agent*
120 Broadway
New York, New York  10271
(212) 238-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



THE BANK OF NEW YORK MELLON, as
ESCROW AGENT,

                Plaintiff,

    - against -

GPC HOLDINGS B.V., CITICORP
INTERNATIONAL FINANCE
CORPORATION, LAT CAP II SPV (SPAIN)
S.L., INTERNATIONAL PACKAGING
COMPANY S.Á.R.L. and PARIBAS NORTH
AMERICA, INC.,

                Defendants.

Civil Action No.

**PLAINTIFF'S RULE 7.1**
**DISCLOSURE STATEMENT**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable District Judgment and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the undersigned counsel for plaintiff, The Bank of New York Mellon, as Escrow Agent ("BNY Mellon"), states, as follows:

The Bank of New York Mellon Corporation is the parent company of BNY Mellon. The Bank of New York Mellon Corporation is a publicly held corporation that owns 10% or more of the stock of BNY Mellon.

Dated: New York, New York
      November 12, 2009

               **EMMET, MARVIN & MARTIN, LLP**

        By: _____
             Tyler J. Kandel (TK-4452)
             Laura J. Babcock (LB-9623)
             *Attorneys for Plaintiff*
             *The Bank of New York Mellon, as Escrow Agent*
             120 Broadway
             New York, New York  10271
             (212) 238-3000